UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:23-CV-00168-CRS

STEPHANIE C. WHITE                                                    PLAINTIFF

v.

SCHNEIDER HOTELS, LLC                                               DEFENDANTS
d/b/a THE GALT HOUSE, *et al*

## MEMORANDUM OPINION

Plaintiff, Stephanie C. White, sued Schneider Hotels, LLC (d/b/a The Galt House) and the AL J. Schneider, Company, alleging discrimination. White argues that in violation of Title VII, these companies (1) discriminated against her based on her race and sex (2) created a hostile work environment based on race and sex and (3) retaliated against her for reporting discrimination. Defendants seek a summary judgment in their favor on all these claims pursuant to Federal Rule of Civil Procedure 56. Defendants assert that none of White's claims is triable—first because White has admitted she does not have a race-based claim and second because White cannot carry her burden of proof with respect to discrimination based on her gender. The Court agrees. White has abandoned any claim for race discrimination and she has failed to carry her burden of proof with respect to a claim for sex discrimination. Accordingly, the Court will grant Defendants' Motion for Summary Judgment and enter a judgment in their favor.[1]

## BACKGROUND AND PROCEDURAL HISTORY

White worked as a bartender in the Jockey Silks Bourbon Bar, a facility located in the Galt House Hotel in downtown Louisville, Jefferson County, Kentucky. Her supervisor was Alex

---

[1] On August 29, 2025, White submitted a letter to the Court (DN 38). She contends that her attorney has been non-responsive to her queries and seeks a response from the Court as to this action's status. Because White has an attorney, her *pro se* request for relief from the Court is improper. *See U.S. v. Mosely*, 810 F.2d 93, 97-98 (6th Cir. 1987). Even so, the instant Opinion resolves White's query as to this action's status, mooting her letter request.

Farah. White alleges that Farah engaged in sexual harassment and other gender-based discrimination. Amended Complaint, DN 9. More specifically, White alleges that Farah used crude, sexually charged language in the workplace, telling her on one occasion that he wanted "f***k" a woman he saw in the Jockey Silks Bar. *Id.* Additionally, White testified that Farah condoned a practice whereby she was forced to leave dayshifts early so that male bartenders who worked the nightshift could start early and avoid tip sharing for those hours that overlapped with White's hours. 01/31/2024 White Depo. at 178-79: 23-12 (DN 29-2). Lastly, White alleges that she complained about Farah's behavior and that he retaliated against her for doing so by writing her up and giving her a bad performance review. Amended Complaint, DN 9.

Additionally, White alleges that while working at the Jockey Silks bar, she endured verbal abuse from her former boyfriend and the father of two of her children, Andrew Peters. *Id.* Peters worked at another facility located within the same premises, a restaurant known as Walker's Exchange. 01/31/2024 White Depo. at 65: 04-10 (DN 29-2). White alleges that Peters verbally abused her in workplace, that she reported it to HR, but nothing was done to protect her from Peters. Amended Complaint, DN 9.

Finally, White alleges that she was also subjected to race discrimination. *Id.* However, during her deposition, White testified that she was not subjected to race discrimination, only to discrimination based on her sex:

> I don't think it even matters that I'm a Black woman. It's the discrimination against women, period. I know that in the filings, they kept making it like a Black woman, but it was just being a woman, period.

01/31/2024 White Dep. at 94-95: 24-03. Defendants moved for a summary judgment based on this testimony. Motion, DN 29, at PageID# 122-23. White's response ignored her own testimony and otherwise failed to address why her race claims should not be dismissed as a result of it.

Defendants also moved for a summary judgment with respect to all of White's sex-based discrimination claims, arguing that she does not have sufficient proof to support those claims. As a result, according to Defendants, they are entitled to a judgment as a matter of law pursuant to Federal Rule of Civil Procedure 56. Motion, DN 29. White filed a Response in opposition to Defendants' Motion (DN 34) and Defendants filed a Reply (DN 36). Thus, Defendants' Motion is ripe for decision. Having reviewed the parties' filings, the Court concludes that Defendants are correct. White has failed to carry her burden of proof, warranting a judgment in Defendants' favor.

## ANALYSIS

As the plaintiff, White bears the ultimate burden of proof on her claims. Thus, it is her "obligation to see that evidence supporting her claims is in the record" and her obligation, in response to a summary judgment motion, to direct the Court's "attention to those portions of the record that support her claims." *Jackim v. Sam's East, Inc.*, 378 F. App'x 556, n.5 (6th Cir. 2010) (unpublished). "When plaintiffs do not provide competent evidence to the court supporting their claims at the proper time, summary judgment is appropriate." *Id.* (citing FED. R. CIV. P. 56).

Accordingly, in making a summary judgment motion, defendants may point out "to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (cleaned up); FED. R. CIV. P. 56(c)(1)(B). Doing so shifts the burden of proof to the plaintiff as the non-movant who "'must set forth specific facts showing that there is a genuine issue for trial.'" *Pittman v. Experian Information Sols., Inc.*, 901 F.3d 619, 628 (6th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). To set forth those facts, the plaintiff must point to materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine dispute of material fact. FED. R. CIV. P. 56(c)(1)(A).

Here, as the plaintiff and non-movant, White was required to carry this burden of proof in response to Defendants' summary judgment motion. She has failed to do so. More specifically, White has failed to set forth specific facts "sufficient to establish the existence of an element essential to" her claims on which she would bear the burden of proof at trial. *Celotex*, 477 U.S. at 323. Such a failure of proof warrants the entry of a judgment in Defendants' favor. *Id.*

**A. White's Race Discrimination Claim**

During her deposition, White testified that she has not sued based on her race:

> **Q.** Okay, and so what are you suing for in this case?
>
> **A.** I'm – I'm suing on the basis that I believe not only did Alex Farah discriminate against me several times, not just through or with the situation with Andrew Peters, but through other situations as well. Just discrimination against me as a woman.
>
> **Q.** Okay.
>
> **A.** I also think he sought retaliation on me when I did go report his behavior.
>
> **Q.** Okay. What else?
>
> **A.** I don't think it even matters that I'm a Black woman. It's the discrimination against women, period. I know that in the filings, they kept making it like a Black woman, but it was just being a woman, period. . . . .

01/31/2024 White Depo. at 94-95: 13-03 (DN 29-2). Defendants assert that this testimony warrants a judgment in their favor. Motion, DN 29, at PageID# 122-23. White did not address either this testimony or Defendants' argument in her Response.

White's testimony shows that she has abandoned her race-based claims. Also, by failing to respond to Defendants' argument, she waived her opposition to it. *Scott v. State of Tenn.*, 878 F.3d 382, 1989 WL 72470 at *2 (6th Cir. 1989) (unpublished table decision) ("if a plaintiff fails to respond or otherwise address a defendant's motion, then the district court may deem the plaintiff to have waived opposition"). These circumstances warrant entry of a judgment for Defendants on White's race-based discrimination claims. Because White has testified that she was not

discriminated against based on her race, she has admitted that she has no claim for race discrimination. Thus, there is no dispute which necessitates a trial. Further, White's failure to address her own testimony and Defendants' argument not only bolsters this conclusion, it also waives any opposition to it. As a result, Defendants are entitled a judgment in their favor on White's race-based claims. *Id.; F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611 (6th Cir. 2014) (court must review record submitted by movant to determine whether dispute of fact exists).

## B. White's Sex Discrimination Claims

Title VII bars discrimination by an employer "against any individual with respect to his compensation, terms, conditions and privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Generally speaking, there are four types of sex discrimination claims: (1) *quid pro quo* sexual harassment claims, (2) disparate impact claims, (3) disparate treatment claims and (4) hostile work environment claims. These four sex discrimination claims are distinct from one another, evident from the differing elements of proof required to establish each claim. It appears that White is pursuing a disparate treatment claim and a hostile work environment claim. However, it is not entirely clear to the Court that she is, in fact, pursuing both.

The allegations in White's Amended Complaint suggest that she is pursuing only a hostile work environment claim. *See* DN 9. Yet Defendants have attacked her case as if she were also suing for disparate treatment, albeit without setting a clear foundation for why they believe White has alleged such a claim.[2] In response, White addresses some of those arguments which suggests Defendants are right and she is pursuing a disparate treatment claim. However, White fails to address all of Defendants' disparate-treatment arguments. At the same time, in some instances, her

---

[2] Additionally, Defendants do not identify which of them was White's direct employer. Only employers may be sued for discrimination under Title VII. 42 U.S.C. § 2000e-2. For purposes of the instant motion only, the Court will assume that there is a basis in fact and law which would permit a judgment against both defendants.

Response conflates elements of a hostile work environment claim with a disparate treatment claim. For example, White discusses Peters' alleged harassment as an adverse employment action. Response, DN 34, at PageID# 233. As a result, it is unclear to the Court if White is suing based on disparate treatment or if she has simply failed to clarify her sex-based claim as being limited to a hostile environment claim. Even so, because both sides have argued elements of a disparate treatment claim based on sex, the Court will proceed as if White meant to pursue such a claim.

### 1. Disparate Treatment Based on Sex

A plaintiff may prove disparate treatment based on sex, or gender, through direct evidence or circumstantial evidence. *Peeples v. City of Detroit*, 891 F.3d 622, 633 (6th Cir. 2018). Direct evidence consists of "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id.* Absent direct evidence, a plaintiff must prove she (1) is a member of a protected class, (2) was subjected to an adverse employment action, (3) was qualified for the job and (4) was replaced by someone outside her protected class or was treated differently than similarly situated, non-protected employees. *Id.* at 634 (citation omitted). These four elements comprise a *prima facie* case for sex discrimination. If a plaintiff points to proof which establishes a *prima facie* case, the burden of proof shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* (internal quotation marks omitted) (citations omitted). If the defendant does so, then the burden shifts back to the plaintiff who must show that the reason given was pretextual. *Id.* This framework is commonly referred to as the *McDonnell-Douglas* burden shifting framework.

In this case, both sides seem to agree that White does not have direct evidence of sex discrimination, as both have limited their arguments to parts of the *McDonnell-Douglas* framework. Defendants first argue that White cannot establish a *prima facie* case of sex

discrimination, asserting that she does not have sufficient proof an adverse employment action. Motion, DN 29 at PageID# 114-16. In response, White asserts that these two actions suffice as proof of an adverse employment action: (1) she "was forced to work with her abuser," Peters, and (2) she was "sent home to satisfy the needs of white male bartenders." Response, DN 34 at PageID# 233. More specifically, White asserts that Peters "continued to be verbally and emotionally abusive and harass her while she was working." *Id.* Defendants argue that this assertion does not evidence conduct based on sex and that White's testimony shows that she has no proof that Peters acted this way because of her female status. Motion, DN 29, at PageID# 118-19. For this reason, they argue that Peters' conduct does not support a finding of discrimination based on sex. *Id.* Again, the Court agrees. "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at discrimination because of . . . sex." *Onacle v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 80 (1998).

As for White's being sent home early, Defendants assert that this happened only once; as a result, this action was not "materially" adverse and for that reason White cannot base a sex discrimination claim on it. Motion, DN 29 at PageID# 116; Reply, DN 36 at PageID# 278. However, White's testimony suggests that Farah condoned a pattern or practice of White's being compelled to leave her dayshifts early:

> He allowed the males to clock me out early, if you could say. . . . So the reason behind the guys wanting me to leave, was because if I stayed . . . they would have to split whatever tips they had with me. So in order to avoid that, they would . . . have me to leave before my shift ended.

01/31/2024 White Dep. at 179: 02-12 (DN 29-2). White also testified that Farah expressly condoned this practice on one occasion and given that incident, she "pretty much just started going home at 4:00 when they came in, because . . . . **Q. Even without asking?** A. They—well, it would be—nobody can leave without like a manager's approval . . . So he was well aware that I was

leaving, and I told him about it." *Id.* at 180-81: 23-04. This testimony muddies the water. The Court cannot say that White's testimony unequivocally shows that Farah acted only once to compel White to leave a dayshift early. And, on a summary judgment motion, the Court must draw all inferences in favor of White as the non-movant. *Matsushita Elec.*, 475 U.S. at 587. A reasonable jury could infer from White's testimony that her being compelled to clock out early became a pattern or practice condoned by Farah.

Additionally, Defendants' materially-adverse argument is not so well-taken as it may have once been. In *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), the United States Supreme Court "abrogated circuit court cases across the country that required plaintiffs to show a high level of harm" to establish an adverse employment action. *McNeal v. City of Blue Ash, Oh.*, 117 F.4th 887, 900 (6th Cir. 2024). "Thus, to challenge a discrete act in a disparate-treatment claim, the statute requires only that a plaintiff show 'some harm respecting an identifiable term or condition of employment.'" *Id.* (quoting *Muldrow*, 601 U.S. at 355). "Crucially, the harm does not have to be 'significant' or 'serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar.'" *Id.* (quoting *Muldrow*, 601 U.S. at 355). Thus, the Court of Appeals for the Sixth Circuit has "recogniz[ed] that *Muldrow* may displace prior cases from our circuit requiring disparate-treatment plaintiffs to show heightened levels of harm." *Id.* Given *Muldrow* and *McNeal*, the Court would decline to grant a judgment to Defendants based on the lack of a "materially" adverse employment action in any event.

Next, Defendants assert that White has not presented any proof with respect to a dayshift bartender who was permitted to stay when the nightshift showed up early. Motion, DN 29, at PageID# 116. ("White has not identified *one* employee who, after working the morning shift, was allowed to stay clocked-in once the night-shift employees arrived and the bar was overstaffed.")

(emphasis in original). This failure is significant because White must show that but for her female gender, she would not have been required to leave her shifts early. *Gutzwiller v. Fenik*, 860 F.2d 1317, 1325 (6th Cir. 1988) ("plaintiff is required to demonstrate that the adverse employment decision would not have been made 'but for' her sex."). Defendants argue that because White has not made such a showing, they are entitled to a judgment on her disparate treatment claim. The Court agrees. Although White asserts that she was required to reduce her hours to prevent tip sharing while male bartenders were not, Response, DN 34, at PageID# 233, she has not "set forth specific facts showing that there is a genuine issue for trial." *White,* 533 F.3d at 390. Thus, there is no record evidence before the Court which would permit the conclusion that Farah would have treated White differently "but for" her female gender. As a result, Defendants are entitled summary judgment on her sex discrimination claim. *Gutzwiller*, 860 F.2d at 1325.[3]

**2. Hostile Work Environment Based on Sex**

A plaintiff may establish a violation of Title VII by proving that sex discrimination "has created a hostile or abusive work environment." *Meritor Savings Bank v. Vinson*, 447 U.S. 57, 66 (1986). "A hostile work environment occurs '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)). "Both an objective and a subjective test must be met: the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." *Id.* (citing *Harris*, 510 U.S. at 21-22). "The work environment as a whole must be considered rather than a focus on

---

[3] As Defendants are entitled to summary judgment on this ground, the Court declines to address their remaining arguments as to a claim by White for disparate treatment based on sex.

individual acts of alleged hostility." *Id.* Accordingly, to determine whether conduct is severe or pervasive enough to constitute a hostile work environment, the Court considers "the totality of the circumstances." *Williams v. Gen'l Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999). Further, if the conduct underlying the claim is not sexual in nature, the plaintiff must show that the harassment was based on the plaintiff's sex. That is, for any non-sexual conduct on which she relies, White must show that but for being female, she would not have been the object of harassment. *Bowman,* 220 F.3d at 463 (citing *Williams*, 187 F.3d at 560-61).

White points to the following allegations in support of her hostile-work-environment claim: (1) Farah's sexually charged comment respecting another woman and (2) Farah's sending her home early from dayshifts to satisfy the wishes of male co-workers. Response, DN 34 at PageID# 235. Defendants assert that neither supports a hostile environment claim. Reply, DN 36, at PageID# 283-84.

Defendants argue that Farah's decision to send White home early cannot be included as evidence of a hostile work environment because it is a discrete, adverse employment action. Reply, DN 36, at PageID# 284-85 (citing cases). However, adverse employment actions can be considered as conduct which contributed to the creation of a hostile work environment. *McNeal*, 117 F.4th at 901. For example, an "adverse action deployed strategically as harassment can . . . add to a climate of hostility that represents a different change in terms or conditions of the job." *Id.* In such cases, the evidence of the adverse action is not the discrete act itself but its part in a course of conduct designed to demean, intimidate, or ridicule an employee because of a protected status, *e.g.* gender. *Id.* at 901-02. "After all, a hostile-work-environment claim is 'based on the cumulative effect of *individual* acts . . . .'" *Id.* at 899 (emphasis in original) (quoting *Nat'l R.R. Passnger Copr. v. Morgan*, 536 U.S. 101, 115 (2002)). Thus, such a claim "'includes every act composing that claim,

*whether those acts are independently actionable or not.*'" *Id.* at 902 (emphasis in original) (quoting *Green v. Brennan*, 578 U.S. 547, 557 (2016)). For this reason, the Court is not barred from considering White's being sent home early.

Nonetheless, the allegation fails to support a hostile-environment claim based on sex. To be probative, "non-sexual conduct" must evince an "anti-female animus." *Williams*, 187 F.3d at 565. White has not presented any record evidence that suggests Farah acted because of such an animus. While White may have perceived this practice as abusive, she has not shown that it was based on her status as a female. For example, White has not shown that Farah exclusively treated all female bartenders this way, *i.e.*, that male dayshift bartenders were permitted to stay at work and only female bartenders were asked to leave, or that he treated her this way because she is a woman. Because White has not shown that an anti-female animus rooted her being compelled to leave dayshifts early, those incidents are not probative of harassment based on sex and cannot be considered in the Court's hostile environment analysis. *Bowman*, 220 F.3d at 463-64.

The lack of such evidence leaves White with a single incident on which to base a hostile environment claim: her assertion that on one occasion Farah used crude, sexually charged language. Response, DN 34 at PageID# 235. According to White, Farah "leaned over to me while we were standing together . . . and he said, 'I'm so going to f***k her.'" 01/31/2024 White Dep. at 165:13-17 (DN 29-2). While this statement was offensive to White and sexual in nature, such a single incident is not severe or pervasive enough to create an objectively hostile or abusive work environment. *See e.g. Bowman*, 220 F.3d 456 (finding that five incidents of alleged harassing conduct were insufficient); *Burnett v. Tyco Corp*, 203 F.3d 980 (6th Cir. 2000) ("single battery coupled with two merely offensive remarks over a six–month period" insufficient); *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784 (6th Cir. 2000) (several dirty jokes, a verbal sexual

advance, calling plaintiff "Hot Lips" and comments about plaintiff's state of dress insufficient). Because White has failed to point to sufficient record evidence of severe and pervasive harassment based on sex, Defendants are entitled to a judgment on her hostile-work-environment claim. *Harris*, 510 U.S. at 21. ("Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment . . . is beyond Title VII's purview.").

## C. White's Retaliation Claim

Title VII makes it unlawful for employers to retaliate against an employee who opposes an unlawful practice. 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter . . . ."). Thus, an employee's voicing opposition to discrimination which she believes has taken place in the workplace is protected conduct under Title VII, so long as the complaint is made in good faith. *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1312-13 (6th Cir. 1989) (protection not lost if employee is wrong on the merits; she need "only have good faith belief that practice is unlawful"). Accordingly, an employer may not retaliate against an employee who makes such a complaint. At the same time, "a vague charge of discrimination is insufficient to constitute opposition to an unlawful employment practice." *Id.* at 1313.

Here, White asserts that she engaged in protected activity because she "informed her supervisors that actions of her supervisor created a hostile work environment and potentially sexually harassing." Response, DN 34, at PageID# 237. She alleges that Farah retaliated against her for this report by writing her up and giving her a negative performance review. *Id.* at PageID# 238. Yet, White points to no record evidence to support her assertion. She has not identified any record evidence which shows that she complained about acts that would create a hostile-work-

environment based on sex or constitute sexual harassment, much less record evidence that shows she made such a complaint before Farah wrote her up. By contrast, Defendants assert that White made only one complaint about Farah prior to being written up. They assert that her complaint was not about discrimination because she said only that Farah was "untrustworthy" and "not a good person." Reply, DN 36 at PageID# 286 (quoting 01/31/2024 White Depo. at 122). These statements, according to Defendants, do not comprise statements about discriminatory practices. The Court agrees.

While White was not required to lodge a complaint with absolute "formality, clarity, or precision,"[4] there still must be content from which her employer could glean that she was opposing a discriminatory practice or action. White has failed to point the Court to any proof that evidences such a complaint on her part. To the extent that she is relying on the same complaint cited by Defendants, that complaint does not suffice. References to a belief that Farah was "untrustworthy" or "not a good person" were too vague to constitute a legally sufficient complaint to management about discriminatory practices. Nothing in these remarks suggests anything about sex discrimination, a hostile work environment based on sex, or sexual harassment. Because White has not pointed the Court to any proof of complaints about a hostile work environment based on sex or sexual harassment and because the complaint identified by Defendants did not concern alleged acts of sex discrimination, White has failed to show that she engaged in protected activity under Title VII. For this reason, Defendants are entitled to a judgment on her retaliation claim. *Booker*, 879 F.2d 1313 (internal memo disagreeing with supervisor's management style and complaints about "ethnocism" too vague to constitute protected activity); *Fox v. Eagle Distributing*

---

[4] *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 645 (6th Cir. 2015) (internal quotation marks omitted).

*Co.*, 510 F.3d 587 (6th Cir. 2007) (charge that management was "out to get" plaintiff insufficient to constitute protected activity).

<u>**CONCLUSION**</u>

Because Defendants have shown that White lacks sufficient proof of elements necessary to her claims and because White has failed to carry her burden of proof in opposition to those Rule 56 arguments, the Court will grant Defendants' summary judgment Motion (DN 29) and enter a judgment in their favor as to all claims by White.

September 15, 2025

Charles R. Simpson III, Senior Judge
United States District Court